thereby to plaintiffs as herein alleged. Plaintiffs will amend this complaint to allege their true names and capacities when said information surface.

6. At all times herein mentioned, each of the defendants was the agent, employee and dependents of each of the remaining defendants and in so doing the acts alleged herein, was acting within the course and scope of said agency, employment or supervision.

7. On or about September 2004, Defendants, KARIM WALJI and NAZLEEN ABDUL KARIM (hereinafter referred to as "WALJI" & "KARIM"), made arrangement through Calvary Church in Mountain View to have Plaintiff, CELSA AVENDONE (hereinafter referred to as "AVENDONE") be employed as a live-in nanny/housekeeper for them. Defendants, WALJI and KARIM met with Plaintiff AVENDONE in their home for an interview. During the interview, Defendants WALJI and KARIM orally stated to her that they would pay AVENDONE to work seven (7) days a week and to be a live in nanny/housekeeper. Defendants gave AVENDONE pay raises, which eventually lead to $1,500 per month per home.

8. On or about February 2005, the housekeeper at Defendant DOULAT WALJI's (hereinafter referred to as "DOULAT") home quit. DOULAT is WALJI's mother and her home is located next door to WALJI's. This housekeeper was named Maria Elena Rodriguez. At this time Defendants, WALJI, KARIM and DOULAT, orally stated that they would pay AVENDONE $1,500 per month per house for a total of $3,000 per month for both homes.

9. Defendants failed and refused to pay Plaintiffs for overtime, sick time and vacation time. Defendants, WALJI, KARIM and DOULAT, refused to provide AVENDONE with any payroll statements, any payroll tax withholdings, pay the required employer's payroll tax contribution, or provide workers' compensation coverage as required by California Law.

3
PLAINTIFFS' SECOND AMENDED COMPLAINT

Case: 10-52797    Doc# 28-1    Filed: 11/03/10    Entered: 11/03/10 16:31:37    Page 1 of 13

AVENDONE would work at times 17 hours per day, and was at all times under the control and supervision of Defendants, WALJI, KARIM and DOULAT.

10. On or about January 2005, WALJI made arrangement with Mexican "coyote" to have AVENDONE's daughter, MIRIAM (hereinafter referred to as "MIRIAM") to come to the United States in order to work with AVENDONE at both houses. MIRIAM was 12 years old (date of birth: 03/22/92) when she came to the United States to work for Defendants WALJI, DOULAT, & KARIM.

11. There were no fixed schedules at either WALJI's and KARIM's home or DOULAT's home. Plaintiffs, AVENDONE and MIRIAM began their duties upon rising by taking care of WALJI and KARIM'S two children and continue to work throughout the day until the children went to sleep. This schedule was seven days a week and Plaintiffs were not allowed leave either WALJI's and KARIM's home or DOULAT's home; with the exception to attend church. When the children were in school or playing by themselves, Plaintiffs AVENDONE and MIRIAM would clean the two homes at the direction of Defendants, WALJI, KARIM and DOULAT.

12. On or about November 2004, Defendants, WALJI and KARIM, orally stated to Plaintiffs AVENDONE and MIRIAM while in their home, that since they were living at WALJI and KARIM's home and did not have a bank account, Defendants would hold onto her monthly pay and would give it to Plaintiffs upon request and that such money would be kept in an interest bearing account. Plaintiffs, AVENDONE and MIRIAM have made numerous requests for their salary and Defendants have refused to pay as promised.

13. Defendants, WALJI, DOULAT, & KARIM, made oral threats to Plaintiffs that if Plaintiffs, AVENDONE and MIRIAM, quit working or attempted to leave WALJI and

KARIM's home, Defendants would kill them, kill their family, and call I.N.S. on them. Further, Defendant WALJI made oral threats to Plaintiffs, AVENDONE and MIRIAM, that he would sexually harm them.

14. Plaintiffs, AVENDONE and MIRIAM, worked for Defendants, WALJI, KARIM, & DOULAT until on or about November 27, 2005, wherein, Plaintiff, JOHNNY BERDUSCO (hereinafter referred to as "BERDUSCO"), assisted AVENDONE and her daughter, MIRIAM AVENDONE to move away from Defendants' home.

15. From January 2005 through August 2005, WALJI and KARIM forced MIRIAM to work at their house and the mother's house next door with the same work schedules as stated herein. Defendants, WALJI and KARIM did not permit MIRIAM to attend school. MIRIAM would work more than 8 hours per day, seven days per week, and Defendants WALJI, KARIM, & DOULAT had full supervision and control over what MIRIAM could do during the entire period she was with them. Defendants violated California and Federal Employment Law as to employment of minor and they did not have any exception under the law such as a work permit for minor MIRIAM to work at their homes. Defendants treated MIRIAM like she was their personal property and she did not have any rights, nor was she allowed to leave, just like slavery.

16. From October 2004 to November 2005, Defendant WALJI, would wait until AVENDONE was alone and his wife was away (children to school or running errands) and/or MIRIAM was at the other house. It was almost a daily event that Defendant, WALJI would direct MIRIAM to work in one house and AVENDONE in the other house. Defendant WALJI, would enter AVENDONE's room or the room she was working in, and sexually assault her. The first incident occurred when AVENDONE was folding clothing in WALJI's home. WALJI entered the room, grabbed AVENDONE'S arms and forcefully pulled her toward him.

5

PLAINTIFFS' SECOND AMENDED COMPLAINT

AVENDONE tried to run out of the room, but WALJI held her back with physical force, tied her up with a cord and threw her onto the ground. WALJI then tied the other end of the cord to the bed. Plaintiff AVENDONE was restrained against her will. WALJI orally stated to AVENDONE that, if she resisted him, he would kill her. WALJI sat on AVENDONE'S legs and forced her to orally copulate him. The sexual assaults with AVENDONE being tied up occurred approximately 6-7 times, and WALJI would lock the room they were in. There are numerous other sexual assault incidents without being tied up and, during these sexual assaults, WALJI would forced his penis into AVENDONE's mouth and he would touch her body underneath the clothing at the same time. The frequency of these sexual assaults would be approximately 4-5 times a week during the time she was employed with Defendants. WALJI made oral threats to AVENDONE not to tell anyone by holding a knife and moving it in a stabbing motion. WALJI orally threatened AVENDONE that he would kill her, report her to I.N.S., kill her parents, and if she doesn't comply with his sexual assault he would sexually abused her daughter, MIRIAM. Fearing for the safety of her daughter, AVENDONE told WALJI not to touch her daughter and he can do what he wanted with her.

17. From January 2005 to November 2005, Defendant WALJI, would wait until his wife, KARIM, was out of the house, and he would order AVENDONE to clean one of the two homes, leaving him alone with MIRIAM in the other house, wherein he would enter MIRIAM'S room or the room she was working in, lock the room, and start to touch her sexually. Defendant WALJI would forcefully remove MIRIAM's clothing. Defendant, WALJI, would force himself onto MIRIAM, as he caressed, kissed and sucked her breasts, and rubbed & inserted his fingers into her vagina and anus. Defendant, WALJI would also expose his penis and rub it against

6
PLAINTIFFS' SECOND AMENDED COMPLAINT

MIRIAM's body and physically force her to orally copulate him until he would ejaculate on her stomach or into pieces of clothing.

18. There were incidents where WALJI assaulted, struck and/or punched MIRIAM on her head for refusing his sexual advances toward her. In another incident, at WALJI mother's home, MIRIAM was cooking when WALJI start touching her and she tried to get away. WALJI then used physical force to grab her arms & hands and forced it onto the hot pan causing burn marks on her arm. WALJI would orally threaten to kill MIRIAM, kill her mother, kill her family, and call I.N.S. to deport them if she tells her mother or anyone of the sexual assaults. To further the survival of his sexual assaults, at times WALJI did not allowed MIRIAM to sleep in the same room with her mother, AVENDONE, and constantly separated them throughout the day to work in different houses. AVENDONE and MIRIAM seldom had the opportunity to sleep together. WALJI treated AVENDONE and MIRIAM as his personal property, like his personal sex and work slaves.

19. Defendant, DOULAT, witnessed one of the sexual assault incidents in her home by WALJI against MIRIAM while she refused his sexual advances and he burned her arms as punishment. DOULAT witnessed, ratified, and adopted WALJI'S extreme and outrageous conduct and did not tell him to stop. DOULAT further witnessed WALJI drag MIRIAM by the arms upstairs wherein he further sexually assaulted her and she ignored MIRIAM'S screams and outcry for help.

20. Defendant, DOULAT, would at times strike and hit AVENDONDE and MIRIAM when they would not perform work satisfactory to her. DOULAT would also yell and scream verbally abusive comments against AVENDONE and MIRIAM.

21. On or about November 27, 2005, Defendants, their family, AVENDONE and MIRIAM were on their way back from Lake Tahoe, when AVENDONE observed WALJI touch her daughter, MIRIAM on the buttock, and then kicked her above that area when she refused to let him touch her there. AVENDONE further saw WALJI gesture to MIRIAM to be quite so that his wife, mother and AVENDONE would not notice his sexual advance toward her. AVENDONE became mentally disturbed that the sexual assault by WALJI has now lead to her daughter. She contacted her friend Alicia at church for help who then contacted the pastor at her church (Light of the Word) for help. Later that night, Pastor, BERDUSCO and Plaintiff, RICHARDO CHAVEZ MONTALVO (hereinafter referred to as "MONTALVO") came to Defendant, WALJI's home. BERDUSCO and MONTALVO were able to escort AVENDONE and MIRIAM out of the Defendant's home. Defendant, WALJI pleaded with Plaintiffs not to go to the police and that he was a good man and a good Christian, and repeatedly orally stated that he will pay AVENDONE the money he owes her. WALJI coordinated for Plaintiffs to come back to his house on the night of November 29, 2006, so he can pay AVENDONE.

22. On or about November 29, 2005, Plaintiffs, and each of them, arrived at WALJI's residence as previously coordinated by WALJI. WALJI instructed his wife not to be home at the meeting time and she complied. During this meeting, WALJI orally offered AVENDONE $8,320 as partial payment for the money he owes her. WALJI plead with AVENDONE and MIRIAM not to leave, not to contact the police or law enforcement, and not to sue him. This meeting lasted for approximately one hour. WALJI then informed Plaintiffs, and each of them, that this was short notice and that he needed to go to the bank to withdraw the rest of the money he owes AVENDONE. During this night, WALJI had his friend, SHIRAZALI LAWJI, (hereinafter referred to as "LAWJI") present to threaten and intimidate Plaintiffs into not

contacting the police and law enforcement. WALJI then coordinated with Plaintiffs for a meeting the next day in the afternoon at a nearby Starbuck Coffee Store. Again, this meeting was the suggestion and coordination by WALJI.

23. After Plaintiffs left, Defendants, and each of them, conspired and agreed to contact law enforcement before the meeting and make a false police report by outrageously misrepresenting to law enforcement that Plaintiffs, and each of them, extorted money from WALJI and his family. Defendants, and each of them, further outrageously and wrongfully misrepresented to law enforcement that AVENDONE and MIRIAM were not employees at their home(s) and no money was owed as pay. Subsequently, however, Defendants' stories change. WALJI initially outrageously and wrongfully represented to law enforcement that no physical force was used as indicated in the 911's dispatch recording. However, later, WALJI changes his story to law enforcement wherein he outrageously and wrongfully reported to law enforcement that Plaintiffs used physical force to obtain money from him.

24. Defendants, KARIM, LAWJI & DOULAT further conspired with WALJI to support his extreme and outrageous misrepresentations in the police report. KARIM made extreme and outrageously false representations to the police and in support of her WALJI'S false representations to the police and that she witnessed the entire incident of November 29, 2005, and when she wasn't even home. LAWJI outrageously misrepresented to law enforcement that Plaintiffs were extorting money from WALJI, when in reality, WALJI was attempting to protect himself from all the extreme and outrageous acts and conduct he has perpetrated upon Plaintiffs AVENDONE and MIRIAM. Defendant, LAWJI, also later changed his story to law enforcement that he did not see nor heard anything between WALJI and Plaintiffs. DOULAT

also outrageously condoned and confirmed the false allegations against Plaintiffs made by WALJI.

25. WALJI made misrepresentation to law enforcement in filing a false report in the 911's call, statement to Law Enforcement Officer Chris Nicholas, statement to Office K. Hansen on November 30, 2005, statement at the Preliminary Hearing, and revised statement to the Deputy District Attorney (Amy Krause) and her investigator. Based on the extreme and outrageous misrepresentations and false accusations made by WALJI, KARIM, DOULAT and LAWJI, the Milpitas Police Department arrested Plaintiffs, incarcerated them in the local jail, and the Santa Clara District Attorney pressed serious criminal charges against them. The media and press made numerous defamatory stories regarding this arrest and false allegation in the community which has damaged plaintiffs' reputation and good character, especially pastor BERDUSCO with his church and members, MONTALVO as a church member, MELENDEZ as a church member and with her business.

26. Plaintiffs JOHNNY BERDUSCO, RUTH MELENDEZ, RICARDO CHAVEZ MONTALVO and CELSA AVENDONE were wrongfully incarcerated and have incurred substantial sums of money to bail out of jail, to defend themselves, and the total and actual amount will be presented according to proof by trial. Plaintiffs were further sustained psychological and physical damages from the arrest, booking process, and incarceration.

27. Plaintiffs have also incurred legal fee and legal costs to defend against the outrageously false accusations in the amount of $40,000 and costs of approximately $4,500. Plaintiffs themselves have also incurred costs to attend to the one and one half years of legal defense; the total and actual amount will be presented according to proof by trial. Plaintiffs, and each of them, have been successful in their legal defenses and on June 25, 2007, all charges have

been dismissed "in the interest of justice" against them by the Santa Clara District Attorney's Office.

28. Plaintiff, MIRIAM has incurred medical expenses, which are ongoing and the total and actual amount will be present according to proof by trial.

## FIRST CAUSE OF ACTION
### ASSAULT AND BATTERY
(All Plaintiffs Against Defendants, WALJI, LAWJI and DOULAT)

29. Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in paragraphs 1 through 28, of the Allegations above and charges said allegations to the Defendants complained of in this Cause of Action.

30. The true names or capacities, whether individual, corporate, associate or otherwise of defendants DOES 1 through 20, inclusive, are unknown to plaintiff who therefore sues those defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a DOE is legally responsible in some manner for the events and happenings referred to, and actually and proximately caused injury and damage to plaintiff as alleged below.

31. At all times herein mentioned, each of the defendants was the agent and employee of each of the remaining defendants and in so doing the acts alleged herein, was acting within the course and scope of this agency and employment.

32. Defendants are and at all times mentioned were, residents of the County of Santa Clara and within the jurisdiction of the above entitled court.

33. From October 2004 to November 2005, Defendant WALJI sexually assaulted AVEDONE on numerous occasions with at least three to four times a week that WALJI would

11
PLAINTIFFS' SECOND AMENDED COMPLAINT

forcefully insert his penis into AVENDONE's mouth and touched her body underneath the clothing. WALJI would restrain AVENDONE by tying her up with a cord and getting his way with her. WALJI made threats to AVENDONE not to tell anyone by holding a knife and moving it in a stabbing motion, he would informed her he would kill her, report her to I.N.S., kill her parents, and if she doesn't comply with his sexual assault he would sexually abused her daughter, MIRIAM AVENDONE.

34. From January 2005 to November 2005, Defendant WALJI would enter MIRIAM AVENDONE's room or the room she was working in, locked the room, and started to touch her sexually underneath the clothing, and remove her clothing. WALJI would force himself onto MIRIAM AVENDONE, caressed and kissed her breast and rubbed & insert his fingers into her vagina. WALJI would also put his penis in MIRIAM AVENDONE's mouth and vagina. One incident where WALJI assaulted and struck MIRIAM AVENDONE on the head for refusing his sexual advances toward her. Another incident wherein MIRIAM AVENDONE was cooking, when WALJI start touching her, and she tried to get away. WALJI then grabbed her arms & hands and forced it onto the toaster causing burn marks on her arm. WALJI threaten to kill MIRIAM AVENDONE, her mother and report her to I.N.S. if she tell anyone that he has sexually assaulted her.

35. On November 29, 2005, SHIRAZALI LAWJI, a friend of WALJI, was present at the meeting with Plaintiffs and started to intimidate and assault plaintiffs by walking around their vehicle over and over, and block the vehicle from driving forward. LAWJI threaten to do harm against Plaintiffs if they don't do what WALJI requested, which is not going to the police. At all times, LAWJI was acting as an agent and servant of Defendant, WALJI in carrying out the threats and assaults against Plaintiffs.

36. Defendant DOULAT has, on several occasions, struck and hit Plaintiffs, AVENDONE and MIRIAM for not performing work to her satisfaction. DOULAT further witnessed, adopted and ratified the acts of her son, Defendant WALJI.

37. By reason of the acts of defendants as aforementioned, Plaintiffs were placed in great fear for their lives, safety, and well-being.

38. By reason of this extreme and outrageous conduct by Defendants, Plaintiffs have suffered extreme and severe mental and emotional anguish and physical pain and suffering and has been injured in mind and body, all of plaintiffs' damages in an amount to be proved at time of trial.

39. By reason of the wrongful acts of defendants, plaintiffs were required to and did employ physicians to examine, treat, diagnose and care for her and incurred additional medical expenses for medical and related expenses in an amount not yet ascertained, but which will be proved at time of trial.

40. The conduct of defendants were intended to cause injury to plaintiffs or, in the alternative, was despicable conduct carried on with a willful and conscious disregard for the rights and safety of others and subjected plaintiff to a cruel and unjust hardship, so as to justify an award of exemplary and punitive damages.

## SECOND CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(All Plaintiff Against All Defendants)

41. laintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in paragraphs 1 through 40, of the Allegations above and charges said allegations to the Defendants complained of in this Cause of Action.

42. At all times herein Plaintiffs had a right to their safety and well-being.

43. At all times mentioned herein, Defendants, and each of them, unconscionably and expressly gave little or no thought to the probable and certain effects of their extreme and outrageous conduct and with the intent to cause great bodily harm upon Plaintiffs' person.

44. At all times mentioned herein, Defendants, and each of them, knew that their conduct was extreme and outrageous, and designed with the intent to cause extreme emotional distress and mental anguish to Plaintiffs.

45. At all times mentioned herein, Defendants', and each of them, conduct was intentional, malicious, despicable, intended to, and did in fact cause extreme emotional distress and mental anguish to all Plaintiffs; including, but not limited to suffering, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

46. As alleged above, Defendant, WALJI, sexually assaulted Plaintiffs, CELSA AVENDONE & MIRIAM AVENDONE during the time period they were working for Defendants. Furthermore, Defendant DOULAT has on several occasions struck and hit Plaintiffs, AVENDONE and MIRIAM for not performing work to her satisfaction. DOULAT further witnessed, adopted and ratified the acts of her son, Defendant WALJI.

47. LAWJI aid and assist WALJI on the night of November 29, 2005 by intimidating and assaulting plaintiffs by walking around their vehicle over and over, and block the vehicle from driving forward. LAWJI threaten to do harm against Plaintiffs if they don't do what WALJI requested, which is not going to the police.

48. All of the Defendants intentionally aid, abet and ratify WALJI's false allegation to Milpitas Police Department and to the Santa Clara District Attorney's Office which resulted in

Case: 10-52797   Doc# 28-1   Filed: 11/03/10   Entered: 11/03/10 16:31:37   Page 12 of 13

the wrongful arrest and incarceration of Plaintiffs (except for MIRIAM), which directly and proximately caused Plaintiffs to suffered extreme emotional distress. Defendants, KARIM and LAWJI gave false statements to Law Enforcement and the Santa Clara District Attorney's Office, which they later recanted on such statement. Defendants, and each of them, knew that such false statements would result in extreme emotional distress to Plaintiffs once they get arrested and that Plaintiff, MIRIAM would also suffer extreme emotional distress in not having her mother around once incarcerated.

49. As a direct and proximate result of Defendants' conduct, and each of them, Plaintiffs suffered and continues to suffer extreme emotional distress, including but not limited to, extreme mental anguish, extreme stress, and extreme psychological problems. Plaintiffs are informed and believe, and thereupon further alleges, that said injuries will result in some permanent disability, all to their general damages in an amount which will be stated according to proof, pursuant to **California Code of Civil Procedure, Section 425.10**, which amount is in excess of Fifty Thousand Dollars ($50,000.00).

50. As a further direct and proximate result of the aforesaid extreme, intentional, and outrageous conduct of Defendants, and each of them, Plaintiff was compelled to and did employ the services of hospitals, physicians, surgeons, nurses and the like to care for and treat her for the above described injuries, and did incur hospital, medical, professional and incidental expenses, and by reason of said injuries Plaintiff will incur additional like expenses for an indefinite period of time in the future, the exact amount of which will be stated according to proof, pursuant to **California Code of Civil Procedure, Section 425.10**.

51. As a further direct and proximate result of the aforesaid extreme, intentional, and outrageous conduct of Defendants, and each of them, Plaintiffs were compelled to miss time

15
PLAINTIFFS' SECOND AMENDED COMPLAINT

Case: 10-52797    Doc# 28-1    Filed: 11/03/10    Entered: 11/03/10 16:31:37    Page 13 of 13